### 13581. WOOD v. THE STATE.

BLOODWORTH, J. The conviction of the defendant was not authorized by the evidence, and the court erred in refusing to grant a new trial.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*

DECIDED JULY 26, 1922.

Indictment for assault and battery; from Wilkes superior court — Judge Shurley. April 1, 1922.

For striking with the fist a policeman who had come into the barber-shop where Wood was employed, and had cursed him and called him a son of a bitch, and had just struck him twice, Wood was convicted of assault and battery. One of the witnesses testified that the policeman slapped Wood and did not use a billy before Wood struck back, but the policeman himself testified that he struck Wood with a billy. Wood struck once and with the right hand, hitting the policeman on the left side and knocking him down. The policeman testified: " It was reported to me that he [the defendant] had drawn a razor on Marsh McKinney." I had no warrant and saw his commit no crime." " The negro Marsh McKinney came after me and said the negro was after him with a razor, and it was around in the negro barber-shop, and I walked in and asked, ' Did that boy get a razor for this negro? ' And before the boy could speak up he said, ' Yes, sir. ' And he put down the razor and came on to me, and I asked this other negro about the row, — the one that runs the shop, L. M. Lunceford, — and before he could tell anything this negro begun to talk; . . he kept talking, and I told him to hush, and he wouldn't do it, and I couldn't get any sense in his head. . . I hit him, and he got worse, and I hit him again, and he knocked me down, and when I got up I was half dazed, and Mr. Hainey had him covered and told me, ' Don't kill him, Jim, don't hurt him,' and we brought the negro on to jail. I hit him with a little billy when I hit him. I didn't hit him overly hard, not as hard as I imagine I ought to have hit him. When he talked to me before I hit him he was talking sassy. His first expression was, ' He did get a razor here,' and I couldn't get him to hush, and it just looked like he was going to take the whole thing. He knew I was an officer. He was drinking; he wasn't drunk. The reason I knew he was drinking, I could smell it on his breath. . . He told me and the sheriff he was drinking extracts. . . I don't think

he was shaving anybody when. I went in there; he was standing there with a razor in his hand, though,. . He was working at one chair — at least he was supposed to work at one chair. I hit him twice before he struck me. . . He had a knife open in his pocket when he was put in jail. I didn't see any knife. . . I never looked at his hand. . . I know he put the razor down when I told him, over there on the other side of the room. . . I suppose he hit me with his right hand. He hit me on my left side. . . I didn't see him when he hit me. . . I don't known that he had anything in his hand. If he had put his hand in his pocket and got anything I would have thought I would have seen him. . . I don't know how many times I hit this boy after he struck me. Once or twice I hit him then with a pistol. . . He was telling me he hadn't done anything to me. I don't reckon he cussed any. He just said he hadn't done nothing, and wanted to know what we were locking him up for. . . I arrested him for disorderly conduct, . . fighting Marsh McKinney. That's what I went around there for."

Hainey testified, that he did not know what the defendant had in his hand at the time of the striking, but that after they arrested him an open knife was found in his hand; also that the knife was in his pocket; that " he had been talking pretty impudent to Mr. Jones " (the policeman), that Jones " slapped him because he was trying to keep him quiet and he wouldn't do it," that Jones " cussed him " and said, " You yellow son of a bitch, shut up," and struck him; " " he made no attempt to do anything until Mr. Jones struck him twice. When Mr. Jones hit him the first time he placed himself in a position to fight right then; . . he hit him with his fist doubled up." " He just hit him once, and then I made him quit. . . I would have killed him if he had hit him the second time. . . I had my gun on him." Another witness testified that he got a knife off the defendant on the night of the difficulty, and there was blood on the big blade, and that on the top of the ear of Mr. Jones, where the defendant struck, the skin was off, and that Mr. Jones bled. The defendant, in his statement at the trial, said that he kept a knife in his pocket in the barber-shop to pull back hairs when shaving, and that if he hit Mr. Jones, Mr. Jones hit him such a lick that he didn't remember anything about it.

*Hugh E. Combs, Frank H. Colley,* for plaintiff in error.
*M. L. Felts, solicitor-general,* contra.